IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LEANNE HANKES and JANIE MORRISON, individually and as Class Representatives, | ) ) ) | |
| Plaintiffs, | ) | Case No. 1:20-cv-04989 |
| | ) | |
| v. | ) | |
| | ) | |
| KRAPILS, THE GREAT STEAK INC., RON MUERSCH, SR., individually, and TEDD MUERSCH, individually, | ) ) ) | Magistrate Judge Keri L. Holleb Hotaling |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT OF**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**INTRODUCTION**

Named Plaintiffs Leanne Hankes ("Hankes") and Janie Morrison ("Morrison"), individually and on behalf of a certified class of 125 employees (collectively "Plaintiffs"), allege that Defendants Krapils, the Great Steak, Inc., Ron Muersch, Sr., Ron Muersch, Jr. and Tedd Muersch ("Defendants" or "Krapils") improperly compensated Plaintiffs' by requiring tip-credit employees to share a portion of their tips with non-tip-credit employees, in violation of the Fair Labor Standards Act, 29 U.S.C. §201 *et seq*. ("FLSA") as well as the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq*. ("IMWL") *et seq*. Defendants have denied and continue to deny Plaintiff's allegations in their entirety. Nonetheless, Plaintiffs and Defendants (the "Parties") have agreed to settle this class action for the significant monetary relief of $301,724.20.

Plaintiffs, by and through their undersigned counsel, respectfully request that this Court enter an order approving the Parties' proposed settlement agreement because it represents a fair and reasonable resolution of the Parties' bona fide dispute and further state as follows:

1

**I.    RELEVANT BACKGROUND**

Plaintiffs Leanne Hankes and Janie Morrison initiated this lawsuit on August 25, 2020, by filing a complaint in the United States District Court for the Northern District of Illinois, Eastern Division, alleging that Defendants' actions violated the FLSA and the IMWL. (Dkt. No. 1). As described in the Parties' Motino for Preliminary Approval, the Parties have diligently participated in arms-length efforts to reach a resolution of this matter, despite unusual set-backs. (Dkt. No. 101). These efforts involved Defendants producing thousands of pages of employee pay and labor records in May 2021 to facilitate the calculation of potential damages for settlement purposes (*see* Dkt. No. 57); participation by the Parties in a settlement conference before Magistrate Judge M. David Weisman on September 20, 2022 (Dkt. No. 55); continued arms-length negotiations in the following weeks and a second settlement conference before Magistrate Judge Weisman (Dkt. No. 57); and ultimately, execution of a Settlement Agreement on April 27, 2023. (Dkt. No. 79-1).

Judge Weisman entered a Preliminary Approval Order on May 31, 2023 (Dkt. No. 85), Defendant provided a class list of the 125 Settlement Class members to the Court-approved Settlement Administrator on June 8, 2023, and notice went out to the class – with zero objectors and zero requests for exclusion. Exhibit 1, Declaration of Johanna Olson ("Olson Decl."). The notice, consistent with the Parties' Settlement Agreement, advised class members that settlement payment was dependent on the outcome of Defendants' application for a loan from a third-party lender. (Dkt. No. 101). On or around August 24, 2023, the third-party lender denied the loan application. (Dkt. No. 101-3). Following this set-back, the Parties engaged in extensive arms-length negotiations which culminated in the Settlement Agreement executed on February 21, 2024.

(Dkt. No. 101-1). The Court preliminarily approved the Settlement Agreement and new form of notice on March 5, 2024. (Dkt. No. 105).

## II. SUMMARY OF THE SETTLEMENT TERMS

The terms of this settlement are contained in the Settlement Agreement. (Dkt. No. 79-1). There are no undisclosed side agreements between the Plaintiffs and Defendants. (Dkt. No. 101-5).

### A. The Settlement Payment

To avoid the time and expense of continued litigation and risks and delays inherent in continuing the litigation, the Parties agreed to the Settlement Fund in the gross amount of $301,724.20. (*See* Dkt. No. 101-1, § II, ¶ 24). The Settlement Fund shall be used to satisfy all of the following as approved by the Court: (1) all payments to Class Members; (2) all Administrative Expenses incurred by the Settlement Administrator, up to $8,000.00; (3) all attorneys' fees and costs in connection with Plaintiffs' Counsel's representation of Plaintiffs and Class Members, including, without limitation, seeking Court approval of the Settlement Agreement, and the notice and claim administration process; and (4) Service Awards to the Class Representatives. (*See id.*, § V, ¶ 3). Class Members will have one hundred twenty (120) days after the mailing of their settlement checks to cash their settlement check. If any Class Member's settlement check is not cashed within 120 days, any unclaimed amounts greater than $10,000.000 shall be retained by Defendants. (*Id.*, § V, ¶ 4). Any unclaimed amounts of $10,000.00 or less shall be distributed to the *cy pres* recipient the Epilepsy Foundation of Greater Chicago, unless the Court does not approve of this *cy pres* recipient, in which case the Parties' will meet and confer to name another *cy pres* recipient. (*Id.*).

### A. Eligible Class Members

The proposed Settlement establishes a Settlement Class defined as follows:

> All individuals who worked for Krapils at a tip-credit rate of pay at any time from August 25, 2017, through May 31, 2021.

(*See id.*, § II, ¶ 25). Based on Defendants' records, there are 125 individuals eligible for the Settlement Class. (*Id.* at § I, ¶ 3).

### C. Releases

The Settlement Agreement provides that upon entry of an order finally approving the settlement by the Court, the Named Plaintiffs and Class Members who have not validly and timely requested exclusion from the settlement will release any and all causes of action or claims against Defendants, whether premised upon statute, contract, or common law, arising out of, relating to or connected with any alleged unlawful wage deductions under the FLSA and the IMWL. (*See id.*, § II, ¶ 19; § VI). Additionally, and in consideration of the Court-approved Service Awards, each Named Plaintiff will provide Defendants and Released Parties with a general release of their claims. (*Id*. at § VI).

### D. Allocation Formula

Following the production of hundreds of pages of pay and labor records by Defendants' for all 125 class members for the relevant period, Class Counsel first identified each hour during the period where the class member was paid at a tip-credit rate. Second, Class Counsel determined the employee's regular, non-tip-credit rate at the time the hours were worked and calculated the difference between that rate of pay and the rate actually paid. When the gross settlement amount in this case was reduced by approximately 64%, Plaintiff deducted each class member's total damages owed by 64%. Thus, each Settlement Class Member shall receive 64% of their total outstanding damages (not including statutory damages). (*See* Dkt. No. 101-5).

4

E.    **Service Awards to Named Plaintiffs**

Plaintiffs will seek, and Defendants will not oppose, distribution of Service Award payments to both Named Plaintiffs, paid out of the gross Settlement Fund, in the amount of $15,000.00 ($10,000 to Janie Morrison and $5,000 to Leanne Hankes), as payment for their efforts on behalf of the class, including assisting Class Counsel with the prosecution and resolution of the Lawsuit, including participation in the settlement conference held by the Magistrate Judge. (*See* Dkt. No. 79-1, § IV(C), ¶ 4(c)).

F.    **Attorneys' Fees and Litigation Costs**

Class Counsel will seek, and Defendants will not oppose, an award of attorneys' fees in the amount of $99,077.00, plus reasonable out-of-pocket costs and expenses not to exceed $800.00. (*See Id.*, § IV(D), ¶ 1). Class Counsel contends that these sums are fair and reasonable in light of all of the facts and circumstances, including time spent by Class Counsel, their hourly rates, the risks undertaken, and the results achieved. (Dkt. No. 101-5).

**III.   STANDARD GOVERNING MOTIONS TO APPROVE FLSA SETTLEMENTS**

In the Seventh Circuit, settlements of FLSA claims must be approved by a Court of competent jurisdiction. *See, e.g.*, *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986) (citing *Lynn's Food Stores, Inc. v. Dep't of Labor*, 679 F.2d 1350, 1352-53 (11th Cir. 1982)); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2001 WL 1403007, at *6 (N.D. Ill. Nov. 7, 2001). An employee may compromise a claim under the FLSA pursuant to a court-authorized settlement of an action alleging a violation of the FLSA. *Lynn's Food Stores, Inc.*, 679 F.2d at 1355. When reviewing a proposed FLSA settlement, the district court must scrutinize the settlement for fairness and decide whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1353, 1355. If a

5

settlement in an employee FLSA suit reflects a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

## IV. APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The settlement reached by the Parties represents a fair, just, and reasonable resolution of the claims alleged by Plaintiffs under the FLSA and IMWL and any remaining disputes between the Parties. The agreement reached is the result of extensive negotiations between the Parties to resolve this matter. The Settlement Amount agreed upon bears a reasonable and fair relationship to the amounts alleged by the Representative Plaintiffs and Plaintiff Class, and also takes into account the specific risks and uncertainties associated with this litigation. The Settlement Agreement was negotiated at arm's length by experienced counsel concerning *bona fide* disputes between their clients. Significantly, the Settlement Agreement provided for monetary relief for all Plaintiffs.

### A. *Bona Fide* Disputes Exist

The settlement of the instant action involves a *bona fide* dispute. Plaintiffs maintain that Defendants improperly compensated Plaintiffs by requiring tip-credit employees to share a portion of their tips with non-tip-credit employees, in violation of the FLSA and IMWL. On liability, Plaintiffs would have to overcome Defendants' numerous legal and factual defenses, including, but not limited to the following:

1) Defendants complied with all provisions of the FLSA and Illinois wage law at all times; and

2) To the extent Plaintiffs could prove that Defendants did not comply with the FLSA, Defendants maintain that the violation was not intentional.

Questions about the amount of table-facing activities performed by kitchen employees and

whether the individual Defendants are "employers" under the FLSA would require significant discovery and briefing. Additionally, as in any complex action, the Plaintiffs generally face uncertainties. *See, e.g., West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced").

### B. The Settlement Is Fair and Reasonable

In determining whether a settlement is fair and reasonable, courts have considered non-exclusive factors such as: "(1) the strength of the case for the plaintiffs on the merits, balanced against the money or other relief offered in the settlement; (2) the defendant's ability to pay; (3) the complexity, length and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of members of the class to the settlement; (7) the opinion of competent counsel; and (8) the stage of proceedings and the amount of discovery completed." *Armstrong v. Board of Sch. Dirs. Of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Of these considerations, the first is the most important. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

Even a preliminary application of these factors to this case demonstrates that the proposed Settlement is fair, reasonable, and adequate. As to the first factor, the Settlement in this case provides material benefits to the Settlement Class: every Settlement Class Member who does not timely exclude himself or herself will receive a monetary payment from the Settlement Fund amounting to 64% of all outstanding wages allegedly owed. The Administrative Expenses, Fee Award, and Service Awards were negotiated separately from the Settlement Class Members' individualized settlement amounts. This is an exceptional relief.

Plaintiffs believe they would likely prevail on the full statutory relief from their claims (in other words, in achieving a judgment regarding their entitlement to liquidated damages, treble damages, and interest under the FLSA and IMWL). But the reality is that victory is far from a foregone conclusion, particularly as Defendant's ability to pay is a known issue in this case. Further, Defendants have denied and continue to deny Plaintiffs' allegations, and also expressed their intent to pursue several legal and factual defenses including, but not limited to, their fundamental position that Plaintiffs were properly compensated under the FLSA and the IMWL. If Defendants were to succeed on any of their defenses to liability against Plaintiffs' claims, Settlement Class Members would recover nothing. *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time and cost associated with continued litigation") (internal citations omitted). "If the Court approves the [Settlement], the present lawsuit will come to an end and [Settlement Class Members] will realize both immediate and future benefits as a result." *Id*. Approval would allow Plaintiffs and the Settlement Class Members to receive meaningful and significant payments now, instead of years from now, or never. *See Id*. at 582.

In the absence of settlement, it is certain that the expense, duration, and complexity of the protracted litigation would be substantial. The Parties would have to engage in extensive discovery and motion practice, including motions for summary judgment and potentially, trial. Further, given the complexity of the issues and the amount in controversy, the non-prevailing party would likely appeal any decision on the merits. As such, the immediate and considerable relief provided to the Class under the Settlement Agreement weighs heavily in favor of its approval, compared to the inherent risk and delay of long and drawn-out litigation, trial, and appeals.

Here, Defendants are willing and able to enter into the proposed Settlement Agreement for the agreed-upon amount of $301,724.20 to settle Plaintiffs' and Class Members' FLSA and IMWL claims. And given each statute's ramifications for violations, proceeding to trial, even assuming Plaintiffs were entirely successful, could result in no payments to Settlement Class Members. This factor weighs in favor of approval.

With respect to factors four and six, notice was successfully mailed to all 125 individuals and none of the Class Members objected to or asked to be excluded from the settlement. Exhibit 2, Declaration of Shari Lynne Grayson ("Grayson Decl."), ¶¶ 13-14.

Regarding factor five, there is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arms-length negotiations. *Newberg On Class Actions (3d)*, § 11.42, at 11-91 (1982). As described *supra*, the Settlement was reached only after arm's-length negotiations between Counsel for the Parties, participation in two settlement conferences with Magistrate Judge Weisman, and renewed arms-length negotiations following the denial of the third-party loan. Such an involved settlement negotiation process, and the Court's assistance, underscores the non-collusive nature of the proposed Settlement. Finally, given the excellent result for the Settlement Class in terms of the monetary relief made available, it is clear that this Settlement was reached as a result of good-faith negotiations rather than any collusion between the Parties.

As to factor seven, Plaintiffs' Counsel believe that the proposed Agreement is in the best interest of the Settlement Class Members, because they will be provided an immediate payment instead of having to wait for the litigation to run its course. Further, due to the defenses that Defendants would raise should the case proceed through litigation – and the resources that Defendants have committed to defend and litigate this matter through potential trial and appeal,

which could exhaust Defendants' ability to pay a final judgment – it is possible that the Settlement Class Members would receive no benefit whatsoever in the absence of this Settlement. *See Williams v. General Elec. Capital Auto Lease*, 1995 WL 765266, at *11 (N.D. Ill. 1995) (finding opinion of counsel factor satisfied where "the settlement likely has gained more than the potential recovery could have"). Given Class Counsel's extensive experience litigating similar class action cases in federal and state courts across the country, including other FLSA and IMWL cases, this factor also weighs in favor of granting Preliminary Approval. *See GMAC Mortg. Corp. of Pa. v. Stapleton*, 603 N.E.2d 767, 776 (Ill. App. 1 Dist. 1992) (finding that the court should give weight to the fact that class counsel supports the class settlement in light of its experience prosecuting similar cases). (*See* Dkt. No. 101-5).

Finally, with respect to factor eight, this matter was filed over four years ago. Since that time, the Parties have engaged in the production and review of documents for settlement purposes and an extensive arms-length negotiation process. Had the Parties not reached an agreement, this case would have proceeded to discovery and motion practice, potential trial and likely appeals, and the Parties would be required to expend substantial resources to go forward with their respective claims and defenses, all while facing a significant risk regarding any final judgment and subsequent appeals.

The Court need not rule on a completely blank slate as to the fairness, reasonableness, and adequacy of the instant Settlement. Indeed, courts have regularly approved FLSA settlements where the agreement provides class members with compensation substantially equivalent to their alleged damages and is reasonably close to the amount each individual would receive if litigated individually. *See, e.g., Hayes v. Thor Motor Coach, Inc.*, Civ, Act, No. 3:19-cv-375, 2022 WL 4137227 at *2. (N.D. Ind. Jan. 13, 2022) (order granting final approval of class action settlement

10

for employees with wrongfully deducted wages under the FLSA); *see also Black v. Renaissance Learning, Inc.*, Civ. Act. No. 15-cv-635, 2016 WL 9460662 at *5. (W.D. Wis. Nov. 10, 2016) (order granting preliminary approval of class action settlement for sales representatives not paid overtime wages under the FLSA). Further, as the parties intend to execute, settlements will meet the standard for approval when "[t]he direct issuance of settlement checks informs Settlement Class Members of the specific amounts of their individual Settlement Payments." *Brewer v. Molina Healthcare, Inc.*, Civ. Act. No. 1:16-cv-09523, 2018 WL 2966956 at *2 (N.D. Ill. June 12, 2018) (order approving a class action settlement for health managers not paid overtimes wages under the FLSA). Lastly, settlement agreements have been approved when they treat class members equitably relative to each other and class members will receive alleged damages based on the present value damages model that "Plaintiffs have maintained is the appropriate method for apportioning damages throughout litigation[.]" *Burnett v. Conseco Life Ins. Co*., Civ. Act. No. 118-cv-00200, 2021 WL 119205 at *9. (S.D. Ind. Jan. 13, 2021) (order granting final approval of class action settlement for insurance policyholders).

Based on the aforementioned factors, the Parties conclude that a settlement on the terms set forth in the Settlement Agreement is fair, reasonable, adequate, in the best interests of the Parties, and not worth the costs and risks associated with a trial. As part of the Settlement Payment, the Parties have agreed that Plaintiffs' counsel will receive $$99,077.00 in attorneys' fees and $800 in recoverable costs, a sum Plaintiffs' counsel represents is consistent with the attorney-client agreement executed by the Representative Plaintiffs. Defendants have no objection to the fees and costs. In sum, the Settlement Agreement constitutes a fair and reasonable settlement of all claims consistent with abundant precedent, and the interests of judicial economy support approval of the Settlement Agreement.

## **CONCLUSION**

For the reasons set forth above, the Parties respectfully request an order: (1) approving the Settlement Agreement, releasing each of the 125 individual Plaintiffs' Claims, and authorizing the payments to eligible Plaintiffs, including the service payments to Named Plaintiffs Janie Morrison and Leanne Hankes, and the payment of attorneys' fees and costs set forth therein; (2) dismissing the action in its entirety with prejudice as to each of the 125 Plaintiffs; and (3) retaining jurisdiction only for the limited purpose of implementing and enforcing the terms of the Settlement Agreement until all payments and obligations contemplated by the Settlement are completed. *See* Proposed Approval Order and Final Judgment attached hereto as Exhibit 3.

Dated: June 4, 2024                              Respectfully Submitted,

                                                 */s/ Anna M. Ceragioli*

                                                 Ryan F. Stephan
                                                 James B. Zouras
                                                 Anna M. Ceragioli
                                                 **STEPHAN ZOURAS, LLC**
                                                 222 W. Adams St., Suite 2020
                                                 Chicago, IL 60606
                                                 (312) 233-1550
                                                 (312) 233-1560 (fax)
                                                 rstephan@stephanzouras.com
                                                 jzouras@stephanzouras.com
                                                 aceragioli@stephanzouras.com

                                                 **ATTORNEYS FOR PLAINTIFFS**

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on June 4, 2024, she electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois by using the CM/ECF system, which sent notification of such filing to all CM/ECF participants.

*/s/ Anna M. Ceragioli*